UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BRONX CONSERVATORY OF MUSIC,
INC.,

                                    Plaintiff,

              -against-

PHILIP KWOKA and THE BRONX SCHOOL
FOR MUSIC, INC.,

                                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/4/2024_____

21 Civ. 1732 (AT)

**ORDER**

ANALISA TORRES, District Judge:

This case arises out of Defendant Philip Kwoka's decision to leave the Bronx Conservatory of Music (the "Conservatory"), where he served as executive director, and establish a youth arts program of his own: the similarly named Bronx School for Music (the "School"). The Conservatory brings this action against Kwoka and the School (collectively, "Defendants"), alleging misappropriation of trade secrets and unfair competition under federal and New York law, among other claims. Compl., ECF No. 1.

Before the Court is Defendants' motion for summary judgment, ECF No. 81, and the Conservatory's motion for leave to file a sur-reply, ECF No. 90. For the reasons stated below, the Conservatory's motion is DENIED, and Defendants' motion is GRANTED IN PART.

**BACKGROUND[1]**

The Conservatory is a nonprofit organization founded in 1991 "with the goal of offering the finest musical instruction to local students in the Bronx, a largely underserved community." Compl.

_____

[1] The facts in this section are taken from the parties' Rule 56.1 statements, responses, and declarations, unless otherwise noted. Disputed facts are so noted. Citations to a paragraph in a Rule 56.1 statement also include the opposing party's response. "[W]here there are no citations[,] or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (alteration omitted). On a motion for summary judgment, the facts must be read in the light most favorable to the non-moving party. *Id.* at 69.

¶ 7.  Douglas Meyer is the Conservatory's president and music director.  Defs. 56.1 ¶ 2, ECF No. 79-1.

Kwoka, a classically trained pianist, became the executive director of the Conservatory in October 2015.  *Id.* ¶ 8.  During his tenure, Kwoka "grew the size of [the] student body," "solicited new donors and benefactors," and "secured press coverage" for the Conservatory.  Pl. Opp. at 26, ECF No. 87.  He resigned in June 2020 after failing to reach agreement about an employment contract, and spent the summer training his replacement.  Defs. 56.1 ¶¶ 50, 55.

On November 25, 2020, Kwoka incorporated the School.  *Id.* ¶ 57.[2]  Over the next month, Kwoka sent emails to "his personal contacts, his former students and/or students referred by other parents, faculty member[s,] and community friends," informing them about the new School.  Pl. 56.1 ¶¶ 19–23, ECF No. 85-1.  The Conservatory alleges that Kwoka's recruitment efforts were successful, "lur[ing] . . . away" Conservatory faculty and students to teach and take lessons, respectively, at the School.  Compl. ¶¶ 21–22; *see also* ECF No. 81-21 (listing 28 School students who previously studied at the Conservatory).  The Conservatory further alleges that Kwoka misappropriated the Conservatory's "extensive lists of students, prospective students, faculty, prospective faculty, donors, and prospective donors" for his outreach, which it contends are protected trade secrets.  Compl. ¶ 9.

On February 26, 2021, the Conservatory filed this action, alleging eight causes of action: (1) violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1831 *et seq.*; (2) misappropriation of trade secrets under New York law; (3) copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 501 *et seq.*; (4) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (5) unfair competition under New York law; (6) breach of fiduciary duty; (7) conversion; and (8) unjust

---

[2] Defendants' Rule 56.1 statement contains two paragraphs numbered 57, neither of which the Conservatory contests. The Court here refers to the one that begins on page 17.

enrichment.  Compl. ¶¶ 26–62.  Defendants filed an answer and counterclaims, ECF No. 26, and the Court granted the Conservatory's motion for judgment on the pleadings on the counterclaims, ECF Nos. 66, 78.

Defendants now move for summary judgment on all of the Conservatory's claims.  ECF No. 81.

## DISCUSSION

I.    Motion to File a Sur-Reply

As an initial matter, the Conservatory requests leave to file a sur-reply.  Sur-Reply Mot., ECF No. 90; *see* Defs. Reply, ECF No. 89.  Motions for leave to file a sur-reply "are subject to the sound discretion of the [C]ourt."  *Bates v. Deva Concepts LLC*, No. 20 Civ. 9056, 2022 WL 2106494, at *3 (S.D.N.Y. June 10, 2022) (citation omitted).  Courts do not often permit sur-replies "because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs."  *Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 465 (S.D.N.Y. 2023) (citation omitted).  Still, sur-replies may be permitted "when an opposing party raises arguments for the first time in a reply."  *Id.* at 466.

The Conservatory contends that the sur-reply addresses new evidence attached to and issues raised in Defendants' reply.  Sur-Reply Mot. at 1–2; *see also* ECF No. 90-1 (proposed sur-reply).  It argues that the reply presents new "factual allegations regarding some Google Sheets . . . and other matters," as well as new arguments about whether a movant can refer to facts not within their Rule 56.1 statement and the credibility of Meyer's testimony.[3]  ECF No. 90-1 at 2–3.

However, Defendants' defense of its Rule 56.1 statement directly addresses an argument raised in the Conservatory's response.  *See* Pl. Opp. at 4–6, ECF No. 87; Defs. Reply at 4.  And

---

[3] For their part, Defendants offer a lengthy letter rebuttal to the sur-reply, although they "do not object to the [C]ourt's acceptance" of the brief.  ECF No. 93 at 1.

assuming without deciding that Defendants' arguments about the Google Sheets and Meyer's credibility are "new," the Court finds that they do not materially impact the outcome of the summary-judgment motion. The Court, therefore, shall "disregard argument[s] raised for the first time in reply papers," and DENIES the parties' requests to file any further briefs. *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 71 (2d Cir. 2010).

II.    Defendants' Motion for Summary Judgment

     A.    Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents[,] . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation marks and citations omitted).

Where the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can "point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). A genuine dispute of material fact exists when "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

        B.        Misappropriation of Trade Secrets

First, Defendants seek summary judgment on the Conservatory's claim for misappropriation of trade secrets, which alleges that Kwoka used the Conservatory's proprietary lists to solicit its students, faculty, and donors for the School (the "Student List," "Faculty List," and "Donor List," respectively).  Defendants argue that the Conservatory lacks direct evidence of misappropriation, and failed to take reasonable steps to protect its alleged trade secrets in any case.  Defs. Mem. at 12–13, ECF No. 81-1.  The Court agrees.

The DTSA defines "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information," if:

> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).  "In assessing DTSA claims, courts in this Circuit often look to New York trade secret law."  *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 421 (S.D.N.Y. 2021).[4]  Under New York law, a plaintiff claiming trade secret misappropriation must prove that "(1) it possessed a trade secret, and (2) [the] defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means."  *Id.* (quoting *Integrated Cash Mgmt. Servs., Inc.*

---

[4] "[T]he elements for a misappropriation claim under New York law are fundamentally the same as a DTSA claim." *Zabit*, 540 F. Supp. 3d at 421 (citation omitted).  The Court shall, therefore, address the federal and state claims for misappropriation together.

*v. Digit. Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990)).  In determining whether information is

a trade secret, courts consider factors including:

> (1) the extent to which the information is known outside of the business;
> (2) the extent to which it is known by employees and others involved in the business;
> (3) the extent of measures taken by the business to guard the secrecy of the information;
> (4) the value of the information to the business and its competitors;
> (5) the amount of effort or money expended by the business in developing the information; [and]
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Universal Processing LLC v. Weile Zhuang*, No. 17 Civ. 10210, 2018 WL 4684115, at *3 (S.D.N.Y.

Sept. 28, 2018) (citing *In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 462 (S.D.N.Y. 2017)).

The Conservatory contends that its Student, Faculty, and Donor Lists are protected trade

secrets.  Pl. Opp. at 18.  At the outset, the Court notes that the Conservatory has not actually

submitted any of the lists, making it difficult for the Court to verify whether they are, in fact, "the

'compilation[s] of information' generally required for a [] list to constitute a trade secret."  *Silent

Gliss Inc. v. Silent Gliss Int'l Ltd.*, No. 22 Civ. 522, 2022 WL 1525484, at *7 (E.D.N.Y. May 13,

2022) (quoting *Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007, 1013 (N.Y. 1993)); *see also* Fed. R.

Evid. 1002 (under the best evidence rule, "[a]n original writing . . . is required in order to prove its

content"); *cf. Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 819 (S.D.N.Y. 2008) (noting

that a defendant is "entitled to know[,] at some point during discovery . . . , the precise trade secrets

[plaintiff] is asserting were misappropriated").  Even granting all favorable inferences about the

contents of the lists to the Conservatory, however, its trade-secrets claims must be dismissed.

1. Student List

First, the Conservatory argues that Defendants misappropriated its "list of students and

prospective students of [the Conservatory], together with their individual contact information,

including their e-mail addresses."  Pl. 56.1 ¶ 7.  Kwoka states that he compiled his mailing lists by using online databases to find email addresses associated with the "hundreds of contacts stored in [his] personal cellphone"—not by copying the Student List.  Kwoka Decl. at 4, ECF No. 81-13.

Customer lists can, in some circumstances, be afforded trade secret protection.  *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 537 (S.D.N.Y. 2004).  Courts have held that "where a company's customers are not readily ascertainable, but must be cultivated with great effort and secured through the expenditure of considerable time and money, the names of those customers are protectable trade secrets."  *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 215 (S.D.N.Y. 2013) (citation omitted and cleaned up).  But "where the employer's past or prospective customers' names are readily ascertainable from sources outside its business, trade secret protection will not attach and their solicitation by the employee will not be enjoined."  *Markets Grp., Inc. v. Oliveira*, No. 18 Civ. 2089, 2020 WL 820654, at *6 (S.D.N.Y. Feb. 3, 2020), *report and recommendation adopted*, 2020 WL 815732 (S.D.N.Y. Feb. 19, 2020) (citation omitted); *see also Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382, 387 (2d Cir. 1982).

Even if the Student List were a trade secret, however, the Conservatory's claim fails.  The Conservatory points to no admissible evidence to counter Kwoka's statement that he did not use the Conservatory's purported trade-secret list in compiling his mailing lists.  *See Markets Grp., Inc.*, 2020 WL 820654, at *10 ("Without evidence of actual use, [plaintiff] has no sustainable misappropriation claim."); *Alpha Media Works, Inc. v. Perception Rsch. Servs., Inc.*, No. 09 Civ. 9563, 2012 WL 406914, at *4 (S.D.N.Y. Feb. 9, 2012).  The Conservatory raises two arguments: first, that Kwoka "only learned of the students, their families and contact information by virtue of his position at the Conservatory," and second, that he maintained lists of students on his personal cell phone.  Pl. Opp. at 17.  Neither is availing.

7

Kwoka does not dispute that he met Conservatory students and their families, and exchanged contact information, during his tenure as executive director there.  Defs. Reply at 12–13.  But the fact that Kwoka later reached out to certain Conservatory students does not establish that he misappropriated the Student List, the purported trade secret.  "[A]lthough a comprehensive list, perhaps developed through a substantial effort spanning many years, constitutes a trade secret, *elements* of the list, such as customer addresses in the public domain[,] are *not*, unless the customers are not known or are discoverable only by extraordinary efforts."  *Parchem Trading, Ltd. v. DePersia*, No. 17 Civ. 1618, 2020 WL 764211, at *9 (S.D.N.Y. Feb. 14, 2020) (cleaned up) (emphasis in original).  And although the Conservatory's president, Meyer, claims that the Student List is "not generally available from any other source," ECF No. 87-4 ¶ 7, the Conservatory points to no evidence suggesting that the identities of individual students are "discoverable only by extraordinary efforts."  Indeed, the identities of at least some of the students are ascertainable to anyone who attends a Conservatory recital or reads the *New York Times*.[5]  *Cf. Jay's Custom Stringing, Inc. v. Yu*, No. 01 Civ. 1690, 2001 WL 761067, at *6 (S.D.N.Y. July 6, 2001) (finding identities of racquet-stringing company's customers not entitled to trade secret protection because they are discoverable "from outside sources, namely any ranking of the world's top tennis professionals").  Further, it does not appear that Kwoka was required to sign any confidentiality agreement during his employment at the Conservatory, which is "inconsistent" with its contention that the names and contact information of individual students "should enjoy trade secret status."  *Id.*

The Conservatory also argues that Kwoka "surreptitiously maintained" student contact information on his personal cell phone.  Pl. Opp. at 7.  Kwoka does not dispute that he used his personal cell phone for Conservatory business; all work calls were forwarded to his cell because "the

---

[5] *See* Pl. Opp. at 20 (citing "a New York Times article about the Conservatory"); Stephen Hiltner, *Saturdays in the Bronx with Bach*, N.Y. Times (Feb. 15, 2019), *available at* perma.cc/7NY9-PYJF.

Conservatory did not have a physical office for employees to use."  Kwoka Decl. at 4.  Again,

however, the Conservatory fails to cite any admissible evidence showing that Kwoka maintained the

allegedly secret Student List—as opposed to contact information for individual students and their

families, *see id.*—on his personal device.  *See Markets Grp., Inc.*, 2020 WL 820654, at *9–10

(finding no disputed issue of fact where plaintiff "rest[ed] on its unsupported assumptions that the

emails sent from [defendant's] phone remain on his phone and that those emails contained

[plaintiff's] trade secrets").

In all, the Conservatory fails to offer evidence—beyond "mere conclusory allegations and

speculation"—that Kwoka misappropriated the Student List in compiling his own mailing list.

*Parchem Trading, Ltd.*, 2020 WL 764211, at *12.

## 2.   Faculty List

The Conservatory further contends that Kwoka misappropriated the Faculty List to "lure[]

away" teachers employed by the Conservatory.  Compl. ¶ 20; Pl. Opp. at 21.  Kwoka responds that he

"offered teaching positions to several of his friends and personal acquaintances," Defs. Mem. at 16,

but did not use any Conservatory list in his outreach, Kwoka Decl. at 5.

Unlike the Student List, the Conservatory makes almost no effort to establish that the Faculty

List is entitled to trade secret protection.  And for good reason: The Conservatory publishes a list of

its faculty on its website, making their identities "readily ascertainable" to the general public.  *Am.*

*Inst. of Chem. Engineers*, 682 F.2d at 387; *see World Class Teachers*, Bronx Conservatory of Music,

*available at* perma.cc/TJ2Q-9YJK.  Therefore, a list of the Conservatory's faculty is not a trade

secret.[6]  Further, even if the Faculty List were entitled to trade secret protection, the Conservatory has

---

[6] In its opposition brief, the Conservatory claims that the Faculty List also details the members' "contact information,
compensation, and skills."  Pl. Opp. at 21.  But trade secret protection "will not attach to [] information that easily can be
recalled or obtained from the [faculty members] themselves."  *Jay's Custom Stringing, Inc.*, 2001 WL 761067, at *6.

made no showing that Kwoka actually used the list in his faculty outreach.  *See supra* Section II.B.2.

### 3.   Donor List

Finally, the Conservatory argues that Kwoka misappropriated the Donor List—although the complaint does not specifically allege how Kwoka used the list, if at all.  Pl. Opp. at 19–20; *see generally* Compl.  Kwoka responds that he "conducted searches of widely available private and public databases as well as government records which are public domain" to construct his own list of donors.  Defs. Mem. at 15–16; Kwoka Decl. at 4–5; *see also* ECF Nos. 89-9, 89-10, 89-11 (sample publicly available tax returns showing donations to the Conservatory).

In light of the admissible evidence presented, the Court concludes that the Donor List is, at most, a "condensed set[] of data that anyone with Internet access could compile and cannot be considered [a] trade secret[]."  *Markets Grp., Inc.*, 2020 WL 820654, at *8; *see also TNS Media Rsch., LLC v. TRA Glob., Inc.*, 977 F. Supp. 2d 281, 313 (S.D.N.Y. 2013) ("[A] client list created through 'widespread canvassing of an obvious and highly competitive market' is insufficient to warrant trade secret protection" (citation omitted)).  And, as with the Faculty and Student Lists, the Conservatory points to no evidence to controvert Kwoka's statement that he did not use the Donor List in reaching out to potential benefactors.  *See supra* Section II.B.2.

Accordingly, Defendants are entitled to summary judgment on the Conservatory's trade-secret claims for misappropriation of trade secrets, both under the DTSA and New York law.

### C.   Copyright Infringement

The Conservatory initially alleged that Defendants copied its curriculum materials, infringing its copyrights under the Copyright Act of 1976, 17 U.S.C. § 501 *et seq*.  Compl. ¶¶ 36–40.  However, it "no longer presses the copyright claim."  Pl. Opp. at 25.  Because the Conservatory has abandoned

the copyright claim, Defendants are entitled to summary judgment.  *See Collins v. City of New York*, 295 F. Supp. 3d 350, 361 (S.D.N.Y. 2018).

D.       Unfair Competition

Next, Defendants argue that they are entitled to summary judgment on the Conservatory's claims for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).  The Court agrees.

In its complaint, the Conservatory alleges that Defendants "confus[ed] students, parents of students and/or others" into believing that the School was affiliated with the Conservatory and that the School "originated the materials that are believed to be copied" from the Conservatory's curriculum.  Compl. ¶¶ 41–47.  It alleges that Defendants' promotional actions violated Section 43(a) of the Lanham Act, which prohibits any person from "us[ing] in commerce any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person."  15 U.S.C. § 1125(a)(1).  "A Lanham Act unfair competition claim examines 'whether the public is likely to be misled into believing that the defendant is distributing products manufactured or vouched for by the plaintiff.'"  *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc*., 64 F. Supp. 3d 494, 513 (S.D.N.Y. 2014) (quoting *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981)).

As a threshold matter, "[a] plaintiff claiming unfair competition under § 43(a) must show that it owns a valid trademark eligible for protection."  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc*., 228 F.3d 56, 62 (2d Cir. 2000).  The Conservatory has not alleged—much less made an evidentiary showing—that it owns a valid mark, registered or unregistered, that is relevant to this case.  Its general appeals to "confusion" do not cover the gap.  *See* Pl. Opp. at 23; *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 630 (S.D.N.Y. 2019) (dismissing Section 43(a) claim where plaintiff

failed "to demonstrate that her name is a valid trademark or is otherwise entitled to trademark protection").

Even if the Court were to interpret the complaint to allege unfair competition based on similarities between the names "Bronx Conservatory of Music" and "Bronx School for Music," the Conservatory would still fail to meet its evidentiary burden.  In addition to showing that the mark "Bronx Conservatory of Music" is entitled to protection, the Conservatory would also have to show, by a preponderance of the evidence, a likelihood of confusion among consumers.  *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004); *see also Playtex Prod., Inc. v. Georgia-Pac. Corp.*, 390 F.3d 158, 161 (2d Cir. 2004).

In assessing the likelihood of confusion, courts look to the eight factors articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) (the "*Polaroid* factors"):

> (1) the strength of the senior mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendant's good faith (or bad faith) in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers.

*Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004).  "No single factor is dispositive, nor is a court limited to consideration of only these factors."  *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130 (2d Cir. 2004).

Because the School concededly competes in the same market as the Conservatory, the third and fourth factors—which "focus on the degree to which the [parties'] products [] compete with each other"—weigh in the Conservatory's favor. *Disney Enters., Inc. v. Sarelli*, 322 F. Supp. 3d 413, 434 (S.D.N.Y. 2018) (citation omitted).  The other factors, however, are either neutral or favor the Defendants.

On the first factor, the strength of the mark, the Court finds that "Bronx Conservatory of Music" is descriptive and, therefore, relatively weak.  "Descriptive marks are marks that describe a product or its attributes."  *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 93 (2d Cir. 2001).  The Conservatory's name describes its market, function, and teaching subject.  "[B]y incorporating familiar words that manifestly refer to the goods or market," the name "piggybacks on the product itself," and is therefore "considered a weak mark."  *BigStar Ent., Inc. v. Next Big Star, Inc.,* 105 F. Supp. 2d 185, 196 (S.D.N.Y. 2000).  The first factor thus favors Defendants.  Although "Bronx School for Music" shares some similarities with the Conservatory's name, the words "Bronx" and "Music" are plainly descriptive of the School's location and purpose.  The second factor is, therefore, neutral.

On the fifth factor, actual confusion, the Conservatory points to an affidavit from a parent who states that he accidentally signed up his daughter for lessons at the School when he intended to keep her at the Conservatory.  Pl. Opp. at 22; *see* ECF No. 81-15.  But the parent goes on to explain that he "was always aware that the two schools had no affiliation with one another, and [Kwoka] never suggested otherwise."  ECF No. 81-15.  In any case, a "single anecdote of confusion over the entire course of competition . . . constitutes de minimis evidence insufficient to raise triable issues." *Savin Corp.*, 391 F.3d at 459 (cleaned up).  The Court finds that this factor weighs in Defendants' favor.

Finally, the Conservatory has offered no concrete, non-speculative evidence as to the sixth, seventh, and eighth factors: Defendants' bad faith, the quality of the School's product, and the sophistication of buyers in the market.  These factors, therefore, also favor Defendants.

In all, only two of the *Polaroid* factors the Conservatory, while the others are neutral or favor Defendants.  Accordingly, the Conservatory has not demonstrated a likelihood of confusion sufficient to sustain its Lanham Act claim, and Defendants are entitled to summary judgment.

E.  State Law Claims

Finally, the Conservatory brings claims for unfair competition, breach of fiduciary duty, conversion, and unjust enrichment under New York law.[7]  Compl. ¶¶ 48–62.  Having granted summary judgment to Defendants on all of the Conservatory's federal claims, however, the Court declines to exercise supplemental jurisdiction over these state-law claims.  *See* 28 U.S.C. § 1367(c)(3); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("[W]here the federal claims are dismissed before trial, the state claims should be dismissed as well.").  Accordingly, those claims are dismissed without prejudice to their renewal in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to counts 1 through 4 of the Conservatory's complaint.  Counts 5 through 8 are DISMISSED without prejudice to renewal in state court.  The Clerk of Court is directed to terminate the motions at ECF Nos. 81 and 90, enter judgment consistent with this order, and close the case.

SO ORDERED.

Dated: January 4, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge

---

[7] The Court has granted summary judgment to Defendants on the New York trade-secrets claim, which overlaps with the federal trade-secrets claim.  *See supra* at 10.